STATE OF NORTH CAROLINA v. JOHNNY BLUE McKENZIE

No. 64

(Filed 7 March 1977)

1. Criminal Law § 26; Judgments § 37— acquittal — no subsequent litigation of issue previously decided

The acquittal of a defendant even in district court precludes the State from relitigating in a subsequent prosecution any issue necessarily decided in favor of the defendant in the former acquittal, and defendant has the burden of demonstrating the proposition.

2. Automobiles 113; Criminal Law § 26— double jeopardy — failure to raise in trial court — waiver — no issue on appeal

The double jeopardy protection may not be raised on appeal unless the defense and the facts underlying it are brought first to the attention of the trial court; therefore, in a prosecution in superior court for involuntary manslaughter arising from an automobile accident, the State could not properly rely on defendant's driving while under the influence of intoxicants in violation of G.S. 20-138(a) when defendant had been earlier acquitted of this offense in district court, but defendant's failure to raise properly at trial his former district court acquittal as a bar to any proceeding in the superior court amounted to a waiver of the double jeopardy defense he would otherwise have had.

3. Automobiles § 113— manslaughter resulting from automobile accident — sufficiency of evidence

In a prosecution for manslaughter arising out of an automobile accident, evidence was sufficient to be submitted to the jury where it tended to show that defendant was driving on a clear and dry night

on a two-lane stretch of road which continued straight ahead of him for several hundred feet; deceased was riding a bicycle on the road in defendant's lane of travel; the bike was equipped with a headlight and rear reflectors; defendant admitted having consumed four beers; witnesses smelled alcohol on his breath and a breathalyzer test yielded a result of .10 percent blood alcohol by weight; defendant testified that he did not have time to apply his brakes before the accident because he failed to see deceased until he was within six feet of him, his attention having been directed at two passing cars; and defendant admitted several previous motor vehicle violation convictions, including reckless driving, speeding, and driving under the influence.

**4. Automobiles § 114— manslaughter arising from automobile accident — jury instructions**

In a prosecution for manslaughter arising out of an automobile accident, the trial court's instruction to the jury as to their finding "beyond a reasonable doubt that . . . the defendant intentionally or recklessly operated a vehicle on the public highway of this State and that when he did so he was under the influence of intoxicating liquor" was not erroneous in that it failed to define "under the influence" or to indicate evidence supporting "careless and reckless operation," since the court had earlier instructed correctly as to the meaning of "driving under the influence" and had linked the evidence to the pertinent statutory language on reckless driving.

**5. Automobiles § 114; Criminal Law § 168— jury instructions — error favorable to defendant**

Error of the trial court in defining driving under the influence as operating a vehicle "after having consumed such quantity of intoxicating liquor as to cause him to lose his normal faculties, either his mental or physical," was favorable to defendant.

APPEAL under General Statute 7A-30(2) from the decision of the Court of Appeals (opinion by Hedrick, J., concurred in by Brock, C.J., Clark, J., dissenting), 29 N.C. App. 524, 225 S.E. 2d 151 (1976), finding no error in the judgment of *Rousseau, J.,* entered 5 November 1975, MOORE County Superior Court. This case was docketed and argued as No. 53, Fall Term 1976.

*Rufus L. Edmisten, Attorney General, by Jesse C. Brake, Associate Attorney, for the State.*

*Dock G. Smith, Jr., and Richard Roose, attorneys for defendant appellant.*

EXUM, Justice.

The most significant issue on this appeal is whether on a prosecution in superior court for involuntary manslaughter

State·v. McKenzie

arising from an automobile accident, the state may rely on defendant's driving while under the influence of intoxicants in violation of General Statute 20-138(a) when defendant had been earlier acquitted of this offense in the district court. The Court of Appeals answered the issue affirmatively. We disagree. We note, however, that defendant did not properly raise at trial his former district court acquittal as a bar to any proceeding in the superior court. He therefore waived the double jeopardy defense he would otherwise have had. While we agree with defendant's substantive position on the issue presented we conclude nevertheless that there was no error in his trial.

Defendant was originally charged in district court with operating a motor vehicle on the public highway while under the influence of intoxicating liquor in violation of General Statute 20-138(a). The charge arose out of an automobile accident on 11 July 1975 in which the automobile defendant was operating struck and killed one John Chriscoe, a bicyclist. In district court he was convicted of operating a motor vehicle with a blood alcohol content of .10 percent, a violation of General Statute 20-138(b) and by statute, a lesser included offense of driving under the influence. G.S. 20-138(b). The conviction of the lesser offense constituted an acquittal in the district court of the greater offense. *See State v. Miller,* 272 N.C. 243, 158 S.E. 2d 47 (1967); *State v. Broome,* 269 N.C. 661, 153 S.E. 2d 384 (1967); G.S. 15-170. Defendant appealed his conviction to superior court for trial *de novo.* An indictment having also been returned in superior court charging him with involuntary manslaughter, the two cases were consolidated for trial. The jury returned a verdict of guilty in both cases and defendant was sentenced to not less than three nor more than five years imprisonment.

Two of defendant's assignments of error are directed to the denial of his motion for judgment of nonsuit at the close of the state's evidence and at the close of all the evidence, his motion to set aside the verdict as being contrary to the weight of the evidence, and his motion for a new trial for errors committed. Other assignments claim error in certain jury instructions.

Several assignments of error directed to the jury instructions present defendant's main contention that it was error for the court to allow the jury to consider whether defendant vio-

lated General Statute 20-138(a) in the manslaughter case. In its charge to the jury on involuntary manslaughter, the court instructed on possible violations of several safety statutes, including General Statute 20-138(a) (driving under the influence of intoxicating liquor) and General Statute 20-140(c) (operating a motor vehicle on a public highway "after consuming such quantity of intoxicating liquor as directly and visibly affects his operation of said vehicle"). No objection was made at trial to any instruction given, nor is there any indication in the record that any instruction other than those given was requested. Exceptions were taken and error assigned on appeal to those portions of the charge relating to General Statute 20-138(a) but no exception is addressed to the charge as it relates to General Statute 20-140(c). (The evidence required to convict under one would necessarily be similar, if not identical, to that required to convict under the other.)

In his argument that his acquittal of a violation of General Statute 20-138(a) should foreclose submission of that statute to the jury as a potential gravamen for the involuntary manslaughter charge, defendant relies upon the constitutional protection against double jeopardy as it may embody the doctrine of res judicata and collateral estoppel. In his dissenting opinion, Judge Clark of the Court of Appeals relied on *State v. Heitter*, 57 Del. 595, 203 A. 2d 69, 9 A.L.R. 3d 195 (Del. 1964), a case much like that at bar, in which a former acquittal by a justice of the peace of two statutory misdemeanors of reckless driving and driving while intoxicated was held to bar prosecution for manslaughter upon counts in the indictment alleging *those* acts. The manslaughter prosecution on other counts was held not to be barred. The Supreme Court of Delaware held in *Heitter* that "[i]t is a well-settled rule of law that the doctrine of res judicata is available to a defendant in a criminal proceeding," 203 A. 2d at 71, *citing Sealfon v. United States*, 332 U.S. 575, 578 (1948) and *United States v. Oppenheimer*, 242 U.S. 85 (1916). The Court went farther still, rejecting an older rule set forth in *State v. Simmons*, 9 Terry 166, 48 Del. 166, 99 A. 2d 401 (1953) that there was "no actual 'jeopardy' since the magistrate in the first trial did not have jurisdiction over the manslaughter charge" as "an excessively rigid interpretation of the meaning of the word jeopardy." 203 A. 2d at 73. The Court further noted that the test of applicability of double jeopardy depends not only upon whether the second prosecution arose from the same transaction as the first, but "whether or

not the evidence in support of the original charge is absolutely essential to support a conviction of the second charge." *Id.* at 72. An annotation at 9 A.L.R. 3d 203 points out the variances in the law at the time of *Heitter,* noting the increasingly frequent application of *res judicata* principles, including the doctrine of collateral estoppel, in criminal proceedings. This Court seems to have recognized the doctrine but concluded it was not applicable to the facts before it in *State v. Midgett,* 214 N.C. 107, 198 S.E. 613 (1938).

As predicted in the annotation at 9 A.L.R. 3d 203, the United States Supreme Court thereafter held the Double Jeopardy Clause of the Fifth Amendment to be enforceable against the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784 (1969). Thereafter the Supreme Court held that the Double Jeopardy Clause entitled defendants in state criminal proceedings to the benefit of the collateral estoppel doctrine. *Ashe v. Swenson,* 397 U.S. 436 (1970). In *Ashe,* the Supreme Court held defendant's prior acquittal of robbing one victim barred his later prosecution for robbing another victim in the same occurrence where the record of the first trial disclosed defendant's identity as one of the perpetrators to be the sole material issue. The Court said collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443. The Court observed further, *id.* at 444:

"The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' *Sealfon v. United States,* 332 U.S. 575, 579. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estop-

pel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal."

It concluded then that the "established rule of federal law"— the doctrine of collateral estoppel—"is embodied in the Fifth Amendment guarantee against double jeopardy." *Id.* at 445.

[1] In light of these decisions, particularly *Ashe v. Swenson,* it seems to us that the acquittal of a defendant even in district court precludes the state from relitigating in a subsequent prosecution any issue *necessarily* decided in favor of the defendant in the former acquittal. Sometimes it is difficult to ascertain whether on a general verdict the issue in question was necessarily decided in favor of defendant. As the Supreme Court in *Ashe* noted, it may require an examination of the entire record of the earlier proceeding. The burden of demonstrating this crucial proposition is, as we shall show, upon the defendant. The warrant and judgment in the district court proceeding lead inescapably to the conclusion that the issue of whether defendant on the occasion in question was "under the influence" was necessarily answered in his favor in the district court trial. Defendant, however, never brought this proposition to the attention of the superior court at any stage of the proceedings in that court.

The procedure required in criminal trials to assert a double jeopardy defense is well established, both in North Carolina and in other state and federal courts. *See, e.g.,* 4 Strong, N. C. Index 3d, Criminal Law § 26.1; Annot., 9 A.L.R. 3d 203; 22 C.J.S., Criminal Law § 277; 21 Am. Jur. 2d, Criminal Law § 473. The general rule is that the defense of double jeopardy is not jurisdictional. *See, e.g., People v. Superior Court,* 31 Cal. Rptr. 710, 217 Cal. App. 2d 517 (1963); *Barker v. Sacks,* 173 Ohio St. 413, 183 N.E. 2d 385, *cert. denied,* 371 U.S. 898 (1962). It is a defense personal to the defendant. *State v. Hopkins,* 279 N.C. 473, 183 S.E. 2d 657 (1971). If he is to take advantage of it on appeal, he must first properly raise it before the trial court. Failure to do so precludes reliance on the defense on appeal. *State v. Baldwin,* 226 N.C. 295, 37 S.E. 2d 898 (1946); *see also State v. Hopkins, supra.* Generally the defense is raised by a special plea, *State v. Baldwin, supra,* upon which the defendant carries the burden. *State v. Cutshall,* 278 N.C. 334, 180 S.E. 2d 745 (1971). This Court noted in *Cutshall* that ab-

sence of such a plea and evidence to support it constituted an abandonment of this defense; but because the conviction there was of a capital offense, the Court nevertheless considered it.

[2] The essence of these decisions is that the double jeopardy protection may not be raised on appeal unless the defense and the facts underlying it are brought first to the attention of the trial court.

> "The plea of res judicata should be made in the trial court at the earliest opportunity. Attention is called to the fact that under modern rules of practice it is required in some jurisdictions that matters of double jeopardy and res judicata or collateral estoppel must be raised before trial. In any event the defense of res judicata is waived unless properly raised in the trial court.

> . . . .

> "Where the doctrine of collateral estoppel precludes the relitigation in a subsequent criminal prosecution of questions decided by a former judgment in a criminal case, defense attorney . . . should seasonably object to the introduction of evidence bearing on the question of fact previously decided." Annot., 9 A.L.R. 3d at 227, 228.

No plea of double jeopardy was entered in the case at bar. No argument was made in the trial court on that issue, nor is any objection or any motion revealed by the record asserting the defense. As far as the record reveals, the trial court was wholly unaware of defendant's reliance on such a defense or of the potential effect of defendant's acquittal in district court on the charge of driving under the influence in violation of General Statute 20-138(a).

We recognize that the record indicates some likelihood defendant was not informed prior to trial that this issue would be raised once more in superior court to support the involuntary manslaughter charge. The indictment certainly failed to so inform him. Nevertheless, as defendant became aware of the foundation for the state's case against him, it was incumbent upon him to raise the double jeopardy defense in time for the trial judge to have acted upon it. In *State v. Bockman,* 344 Mo. 80, 124 S.W. 2d 1205 (1939), for example, the defendant was likewise uninformed as to a potential double jeopardy issue until the trial was underway. The court held that defendant's

motion during trial for mistrial pending determination of an appeal then pending from his prior conviction was sufficient to preserve the defendant's protection against double jeopardy.

Since defendant here did not timely assert his reliance on this defense at trial it was not error for the trial court to instruct the jury on General Statute 20-138 (a) in its charge on involuntary manslaughter.

[3] We next consider defendant's contention that the court erred in failing to grant his motion for nonsuit. This assignment of error is directed to the sufficiency of the evidence. The record discloses the following evidence to support the state's case: Defendant was driving at night on a two-lane stretch of road which continued straight ahead of him for several hundred feet. Deceased was riding a bicycle on the road in defendant's lane of travel. The bike was equipped with a headlight and rear reflectors. Although no witness knew whether the headlight was operating at the time, one witness did observe the glow of the rear reflector shortly before the accident. The night was clear and dry and defendant's car was in excellent condition. Defendant admitted having consumed four beers. Witnesses smelled alcohol on his breath and a breathalyzer test yielded a result of .10 percent blood alcohol by weight. Witnesses testified that he was unsteady on his feet after the accident, was emotionally distraught and leaned on his car. Swerve marks at the scene indicated a path of travel leading from the right to the left lane and back again. There were 66 feet of tire marks and gouge marks. Defendant testified he did not have time to apply his brakes before the accident because he failed to see deceased until he was within 6 feet of him, his attention having been directed at two passing cars, but that he did swerve his car. He did not stop for about 500 feet after the accident, having "frozen" at the wheel. The accident apparently took place approximately at the driveway of the home of Lloyd Chriscoe, uncle of the deceased. Bloodstains were found 231 feet to the north and the bicycle was found 562 feet to the north of the home. The speed limit was 55 mph, and defendant stated to an officer at the scene that he was traveling "not more than 5 to 10 miles of the speed limit." Defendant admitted several previous motor vehicle violation convictions, including reckless driving, speeding, and driving under the influence.

On motion for nonsuit, the Court must consider the evidence in the light most favorable to the state, which is entitled

to every reasonable intendment and every reasonable inference. *State v. Bowden,* 290 N.C. 702, 228 S.E. 2d 414 (1976) ; *State v. Covington,* 290 N.C. 313, 226 S.E. 2d 629 (1976). The evidence in this case is clearly sufficient to permit a jury to find defendant guilty of criminal negligence. This assignment is overruled.

A motion to set aside the verdict is addressed to the discretion of the trial court and will not be reviewed in the absence of abuse of discretion, which we do not find here. *State v. Lindley,* 286 N.C. 255, 210 S.E. 2d 207 (1974) ; *State v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156 (1971).

[4] Defendant next contends that the court prejudicially erred in other instructions to the jury not already discussed. One portion of the charge objected to on appeal is the passage charging the jury as to their finding "beyond a reasonable doubt that . . . the defendant intentionally or recklessly operated a vehicle on the public highway of this state and that when he did so he was under the influence of intoxicating liquor." Defendant claims the instruction fails to define "under the influence" or to indicate evidence supporting "careless and reckless operation." These contentions are without merit since the court had earlier instructed correctly as to the meaning of "driving under the influence" and had linked the evidence to the pertinent statutory language on reckless driving. It is axiomatic that jury instructions must be construed contextually; segregated portions will not support reversal on appeal where the charge as a whole is free from prejudicial error. *State v. Bailey,* 280 N.C. 264, 185 S.E. 2d 683, *cert. denied,* 409 U.S. 948 (1972) ; *State v. Alexander,* 279 N.C. 527, 184 S.E. 2d 274 (1971). Where the court has correctly defined a term, the failure to repeat the definition is not grounds for exception. *State v. Robbins,* 275 N.C. 537, 169 S.E. 2d 858 (1969) ; *State v. Davis,* 265 N.C. 720, 145 S.E. 2d 7 (1965), *cert. denied,* 384 U.S. 907 (1966).

The organization used by the court in the manslaughter charge involved separate explication of each statutory violation supported by the evidence, followed by a more general instruction tying these separate passages together and reminding the jury that they should return a verdict of guilty of involuntary manslaughter if they found beyond a reasonable doubt that defendant committed one of those violations intentionally or recklessly thereby proximately causing decedent's death. *See* N.C.P.I.-Crim. 206.55. In its entirety the charge is correct.

[5]   Defendant's assignment of error number 6 relates to an incorrect definition of driving under the influence, to wit, operating a vehicle "after having consumed such quantity of intoxicating liquor as to cause him to lose his normal faculties, either his mental or physical." Although a correct instruction should have included the "appreciable impairment" test, *State v. Carroll*, 226 N.C. 237, 37 S.E. 2d 688 (1946) ; *see Atkins v. Moye*, 277 N.C. 179, 176 S.E. 2d 789 (1970), which was correctly stated in the court's earlier definition of "under the influence," the omission of this language is, if anything, favorable to defendant. This charge seems to mean that defendant must "lose his normal faculties" *altogether* in order to be in violation of the statute. We fail to perceive any prejudice to defendant. A new trial will not be awarded for error favorable to defendant. *State v. Goldberg*, 261 N.C. 181, 134 S.E. 2d 334, *cert. denied*, 377 U.S. 978 (1964) ; *State v. Norris*, 242 N.C. 47, 86 S.E. 2d 916 (1955).

Finally, defendant contends the court erred in failing to explain the presumption raised by the breathalyzer results, citing *State v. Cooke*, 270 N.C. 644, 155 S.E. 2d 165 (1967) and *State v. Jent*, 270 N.C. 652, 155 S.E. 2d 171 (1967), where charges were erroneous concerning the presumption. We note that defendant here requested no instruction. No mention of the presumption was made in the charge. There was, therefore, no occasion to explain it.

We have examined all of defendant's assignments of error and find them to be of no merit.

While we do not agree with the reasoning employed by the Court of Appeals, its judgment finding no error is

Affirmed.